PEOPLE v REESE

Docket No. 280001. Submitted September 9, 2008, at Lansing. Decided
        October 14, 2008, at 9:00 a.m.

> Richard Reese, charged in the Wayne Circuit Court with possession
> with intent to deliver more than 50, but less than 450, grams of
> cocaine, moved to suppress evidence of the cocaine for which he
> was charged. Two Inkster police officers had arrested the defen-
> dant for loitering after they saw him in a parked taxicab at an
> apartment complex known as a site for narcotics trafficking and he
> ignored their instructions for him to leave the area. After learning
> from the Law Enforcement Information Network that there was
> an outstanding misdemeanor warrant for the defendant's arrest,
> the officers had informed the defendant that he was also being
> arrested pursuant to the warrant. During an inventory search of
> the taxicab, the police had found the cocaine in a duffel bag
> between the front seats. The circuit court remanded the case to the
> 22nd District Court for a determination whether the officers had
> probable cause to arrest the defendant for loitering. The district
> court ruled that arrest invalid, and the circuit court, Vonda R.
> Evans, J., granted the motion to suppress and also dismissed the
> charge after concluding that the initial arrest had been illegal and
> that the cocaine evidence had to be suppressed because it was
> discovered after an illegal arrest. The prosecution appealed.
>
> The Court of Appeals *held*:
>
> 1. Evidence discovered in a search incident to an unlawful
> arrest may be subject to the exclusionary rule as "fruit of the
> poisonous tree." Not all evidence is fruit of the poisonous tree
> simply because it would not have come to light but for the illegal
> action of the police. Rather, whether the evidence must be sup-
> pressed depends on whether the evidence was discovered through
> the exploitation of the illegality or instead by means sufficiently
> distinguishable to be purged of the primary taint.
>
> 2. Evidence may be sufficiently distinguishable to be purged of
> the primary taint if the causal connection between the illegal
> police conduct and the procurement of the evidence is so attenu-
> ated as to dissipate the taint of the illegal action.
>
> 3. Three factors are considered when determining whether the

causal chain has been sufficiently attenuated to dissipate the taint of the illegal conduct: (1) the elapsed time between the illegality and the acquisition of the evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the misconduct.

4. The discovery of an outstanding arrest warrant can dissipate or attenuate the taint of an initial illegal stop or arrest. Whether the discovery of a preexisting warrant dissipates or attenuates the illegality of the initial stop or arrest will usually depend on (1) what evidence the police obtained from the initial illegal stop before they discovered the outstanding arrest warrant and (2) whether that initial illegal stop was a manifestation of flagrant police misconduct.

5. In this case, where the initial arrest for loitering was not the result of egregious conduct on the part of the police officers, the discovery of the preexisting warrant dissipated any taint occasioned by the illegal arrest for loitering. The circuit court erred by suppressing the cocaine evidence and dismissing the charge against the defendant.

Reversed and remanded for further proceedings.

SEARCHES AND SEIZURES — ILLEGAL ARREST — EXCLUSIONARY RULE — OUTSTANDING WARRANTS.

The discovery of an outstanding arrest warrant after an illegal arrest can dissipate or attenuate the taint of the initial illegal arrest so as to make admissible any incriminating evidence that is discovered in a proper search incident to the lawful arrest pursuant to the warrant (US Const, Am IV; Const 1963, art 1, § 11).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Lori Baughman Palmer*, Assistant Prosecuting Attorney, for the people.

*Wanda R. Cal* for the defendant.

Before: O'CONNELL, P.J., and SMOLENSKI and GLEICHER, JJ.

SMOLENSKI, J. The prosecution appeals by right the trial court's suppression of cocaine evidence obtained

after a search of defendant Richard Reese's car and the dismissal of the related charge against him for possession with the intent to deliver more than 50, but less than 450, grams of cocaine. MCL 333.7401(2)(a)(*iii*). On appeal, we must determine whether the discovery of a preexisting warrant, which was discovered only after the disclosure of Reese's identity during an illegal arrest, is a sufficient intervening and untainted event to justify a subsequent search of Reese's car. We conclude that, under the facts of this case, the preexisting warrant was an intervening, untainted justification for the search of Reese's car. For that reason, we reverse the trial court's orders suppressing the cocaine evidence and dismissing the charge against Reese and remand the case for further proceedings. This appeal has been decided without oral argument under MCR 7.214(E).

### I. FACTS AND PROCEDURAL HISTORY

In September 2007, two Inkster police officers conducted a routine patrol of an apartment complex known for narcotics trafficking. When the officers arrived at the complex, they observed Reese in a taxicab parked in front of the complex. As the officers approached the cab, Reese shut off the engine and got out of the cab. An officer testified that, even before they asked him any questions, Reese asked, "What are you fucking with me for[?]" The officer stated that they informed Reese that the area was known for drug trafficking and asked him why he was there. Reese responded that he was visiting a friend. The officer testified that he then told Reese, "[E]ither you're going to go visit your friend, or you['re] going to leave the area." But Reese refused to do either. The officer stated that they informed Reese that he might be loitering if he remained. The officer described Reese as agitated, upset, and very nervous. He stated

that, even after warning Reese that he might be loitering, Reese continued to hurl profanities at them and did not leave the area. So the officers arrested Reese for loitering.

After placing Reese under arrest for loitering, the officers asked Reese for identification, which he provided. The officers ran Reese's information through the Law Enforcement Information Network (LEIN) and learned that Reese had an outstanding misdemeanor warrant. An officer informed Reese that he was also under arrest pursuant to the outstanding warrant. After arresting Reese and placing him in the police car, the officers called for a tow truck and performed an inventory search of Reese's car. During the search, the officers found a duffle bag between the driver's seat and the front passenger's seat. The duffle bag contained men's clothing and a brown paper bag with more than 120 grams of cocaine.

At Reese's preliminary examination, the district court expressed its belief that the officers did not have grounds to arrest Reese for loitering. Nevertheless, the district court concluded that the officers had the right to search Reese's car incident to his arrest pursuant to the outstanding warrant. For that reason, the district court bound Reese over to the circuit court on the charge of possession with the intent to deliver cocaine.

Reese's counsel then moved to suppress the cocaine evidence and quash the information. The circuit court also expressed doubt about Reese's arrest for loitering and remanded the case to the district court for a determination whether the police officers had probable cause to arrest Reese for loitering. On remand, the district court determined that Reese's arrest for loitering was invalid.

After the district court's determination, the circuit court heard further arguments concerning Reese's motion to suppress the cocaine evidence. The circuit court concluded that, because Reese's initial arrest was illegal, everything discovered as a result of that arrest had to be suppressed. For that reason, the circuit court granted Reese's motion.

The trial court later dismissed the charges against Reese. The prosecution appealed.

## II. SUPPRESSION OF EVIDENCE

### A. STANDARD OF REVIEW

On appeal, the prosecution argues that the circuit court erred when it determined that the cocaine evidence had to be suppressed. Specifically, the prosecution argues that the only thing derived from the illegal arrest for loitering was Reese's identity, which is not evidence. Because the police officers properly arrested Reese pursuant to the outstanding misdemeanor warrant, the prosecution further contends, the police could properly search Reese's car incident to that arrest. This Court reviews a trial court's factual findings in a suppression hearing for clear error, *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005), but reviews de novo the trial court's ultimate ruling on the motion to suppress, *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).

### B. THE EXCLUSIONARY RULE

Both the United States Constitution and the Michigan Constitution protect persons against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *Jenkins, supra* at 31. In order to lawfully arrest a person without a warrant, a police officer must

"possess information demonstrating probable cause to believe that an offense has occurred and that the defendant committed it." *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). Once police officers lawfully arrest a person, the officers may search that person without further justification. *Id.* The permissible scope of a search incident to lawful arrest includes a search of the passenger compartment of a car recently occupied by the person arrested. *People v Mungo*, 277 Mich App 577, 585-586; 747 NW2d 875 (2008), citing *Thornton v United States*, 541 US 615, 622; 124 S Ct 2127; 158 L Ed 2d 905 (2004); see also *New York v Belton*, 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981).

However, evidence discovered in a search incident to an unlawful arrest may be subject to the exclusionary rule as the "fruit of the poisonous tree." See *Wong Sun v United States*, 371 US 471, 487-488; 83 S Ct 407; 9 L Ed 2d 441 (1963). The exclusionary rule is a "judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." *Arizona v Evans*, 514 US 1, 10; 115 S Ct 1185; 131 L Ed 2d 34 (1995). For that reason, its application has been restricted to "those instances where its remedial objectives are thought most efficaciously served." *Id.* at 11. And whether application of the exclusionary rule is appropriate in a particular context is a separate inquiry from whether the police actually violated the Fourth Amendment rights of the person invoking the rule. *Id.* at 10. Further, not "all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *Wong Sun, supra* at 488. Rather, whether the evidence must be suppressed depends on whether the evidence was discovered through " 'exploitation of that illegality or instead by

means sufficiently distinguishable to be purged of the primary taint.' " *Id.* (citation omitted); see also *People v Lambert*, 174 Mich App 610, 616-617; 436 NW2d 699 (1989).

In this case, the prosecution does not contest the district court's determination that the police officers did not have probable cause to arrest Reese for loitering and, therefore, that that arrest was illegal. Hence, whether the circuit court properly suppressed the cocaine evidence depends on whether that evidence was only " 'come at by exploitation' " of the illegal arrest for loitering " 'or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun*, *supra* at 488 (citation omitted).

### C. INTERVENING CIRCUMSTANCES

After the officers unlawfully arrested Reese for loitering, they obtained Reese's name and conducted a LEIN check. The LEIN check revealed that Reese had an outstanding misdemeanor warrant. On the basis of this information, the officers also arrested Reese for the misdemeanor.[1] It was only after the officers informed

---

[1] On appeal, Reese argues that he did not actually have a misdemeanor warrant outstanding at the time of his arrest. However, even if we were to conclude that the LEIN check was inaccurate, that alone would not necessitate the exclusion of evidence discovered after a search incident to an arrest based on that information. See *Arizona v Evans*, 514 US 1, 15-16; 115 S Ct 1185; 131 L Ed 2d 34 (1995) (refusing to apply exclusionary rule to evidence found after a search incident to an arrest based on a quashed warrant where there was no evidence that "the arresting officer was not acting objectively reasonably when he relied upon the police computer record"); *United States v Leon*, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984) (refusing to apply the exclusionary rule to evidence found in the execution of a search warrant, which was later determined to be invalid, where the police officers acted in objectively reasonable reliance on the search warrant); see also *People v Goldston*, 470 Mich 523; 682 NW2d 479 (2004) (adopting a good faith exception to

Reese of this additional ground for his arrest that they proceeded to search his car and discovered the cocaine. Because the officers could lawfully search Reese's car incident to his arrest pursuant to the outstanding warrant, *Mungo, supra* at 585-586, we must determine whether the discovery of this preexisting warrant constitutes an independent basis, which dissipates the taint from the initial illegal arrest, for conducting the search of Reese's car.

On appeal, Reese notes that the police officers would not have been able to perform a LEIN check had they not learned his name, which they learned only after his illegal arrest. Because the discovery of his name was tainted by the illegal arrest, the discovery of the warrant was similarly tainted. For this reason, Reese contends, this Court must conclude that there was no basis for the search of his car. Although there are apparently no Michigan authorities directly on point, several foreign jurisdictions have confronted factual situations similar to this one.

A leading case on this issue is *United States v Green*, 111 F3d 515 (CA 7, 1997). In *Green*, two police officers on routine patrol observed a car ahead of them that one of the officers recognized as having been parked in front of the residence of a person wanted on a federal warrant. *Id.* at 517. The officers decided to follow the

the exclusionary rule). Instead, if the police officers relied in good faith on the information provided by the LEIN check, the evidence would not be subject to the exclusionary rule. *Evans, supra* at 15-16. Because there is no evidence that the arresting officers were not acting objectively reasonably when they relied on the information provided by the LEIN check, even if the arrest based on the warrant disclosed by the LEIN system were unlawful, the cocaine evidence discovered as a search incident to that arrest would not be subject to the exclusionary rule. For that reason, the primary issue on appeal remains whether the discovery of the cocaine was the result of the exploitation of Reese's illegal arrest for loitering.

car on the chance that the wanted person might be in it or that the occupants might know that person's whereabouts. After turning a corner, the driver of the car made a U-turn, turned abruptly onto another street, and stopped on a driveway. The officers followed the car and blocked the driveway with their car. *Id.*

The driver of the car, David Green, got out and began walking to the house, but stopped after one of the officers hailed him. *Id.* While one of the officers obtained David's identification, the other obtained identification from David's passenger, who turned out to be David's brother, Avery. After checking the brothers' identities in their computer system, the officers discovered that Avery had an outstanding warrant. *Id.* The officers then searched the car and discovered crack cocaine and a gun. *Id.* David was later convicted by a jury of charges related to his possession of the cocaine and the gun. *Id.* at 518.

On appeal, David argued that the trial court erred when it refused to suppress evidence of the gun and the crack cocaine seized after the illegal stop. *Id.* The court agreed with Green's contentions that the stop was illegal and that " 'but for' the illegal traffic stop, the police would never have discovered the cocaine and gun." *Id.* at 520. But, citing *Wong Sun, supra* at 487-488, the court noted that the Supreme Court had rejected a simple causation analysis: "Thus, '[e]ven in situations where the exclusionary rule is plainly applicable, [the Supreme Court has] declined to adopt a "per se" or "but for" rule that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest.' " *Id.*, quoting *United States v Cecolini*, 435 US 268, 276; 98 S Ct 1054; 55 L Ed 2d 268 (1978). Rather, the court

stated, the proper question is whether the evidence came to light through exploitation of the illegal conduct or by means sufficiently distinguishable to be purged of the taint from the illegal conduct. *Id.* at 520-521, citing *Wong Sun, supra* at 488. The court further noted that "[e]vidence may be 'sufficiently distinguishable to be purged of the primary taint' if 'the causal connection between [the] illegal police conduct and the procurement of [the] evidence is "so attenuated as to dissipate the taint" of the illegal action.' " *Green, supra* at 521, quoting *United States v Liss*, 103 F3d 617, 620 (CA 7, 1997), quoting *United States v Fazio*, 914 F2d 950, 957 (CA 7, 1990). The court then noted that there were three factors for determining "whether the causal chain has been sufficiently attenuated to dissipate the taint of illegal conduct: (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of the intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Green, supra* at 521, citing *Brown v Illinois*, 422 US 590, 603-604; 95 S Ct 2254; 45 L Ed 2d 416 (1975).

In analyzing these factors, the court noted that the first factor weighed in favor of suppression, but that it was not dispositive on the question of taint. Instead, the court focused on the second and third factors. *Green, supra* at 521. With regard to the second factor, the court concluded that the discovery of the arrest warrant for Avery was an intervening circumstance that was not outweighed by flagrant official misconduct and, consequently, dissipated any taint caused by the illegal stop.

> It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant—in a sense requiring an official call of "Olly, Olly, Oxen Free." Because the arrest is lawful, a search incident to the arrest is also lawful. The lawful arrest of Avery constituted an

intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop. [*Id.*]

Finally, the court turned to the third factor, which it noted was " 'tied to the rationale of the exclusionary rule itself' " and aimed at exploring whether the police exploited their illegal conduct. *Id.* at 523, quoting *Fazio, supra* at 958. The court concluded that under the facts of the case, the police misconduct was not flagrant. The court explained that, although the stop was illegal, there was no evidence of bad faith on the part of the officers and the purpose of the stop was not to obtain evidence against the Greens. *Green, supra* at 523.

> Nor did the police exploit the stop in order to search the automobile. Rather the search only came after they learned that Avery was wanted on a warrant and arrested him. While the officers learned of the outstanding warrant only after continuing the illegal detention, the arrest of Avery was not an exploitation of the illegal stop. [*Id.*]

For these reasons, the court concluded that Green was not entitled to have the cocaine and gun evidence suppressed. *Id.*

Courts in several jurisdictions have come to the same legal conclusion on facts analogous to those of *Green.*[2]

---

[2] See, e.g., *State v Allen*, 222 Or App 71, 79; 191 P3d 762 (2008) (noting that the discovery of outstanding arrest warrants and their execution are intervening events that interrupt the causal connection between the seized evidence and the prior illegal stop); *Myers v State*, 395 Md 261; 909 A2d 1048 (2006); *State v Frierson*, 926 So 2d 1139, 1144-1145 (Fla, 2006) (relying on *Green* and refusing to suppress the evidence because, although the officer made a mistake in the enforcement of the traffic laws, there was no evidence that the stop was a pretext or made in bad faith); *United States v Simpson*, 439 F3d 490 (CA 8, 2006) (citing *Green* with approval and concluding that, where the officers did not knowingly act unconstitutionally and did not purposefully act in an effort to gain evidence, the discovery of a preexisting warrant will constitute an independent basis for questioning and searching the defendant); *Jacobs v State*, 128 P3d 1085 (Okla Crim App, 2006); *State v Page*, 140 Idaho 841,

Of those courts, the Alaska Supreme Court's analysis in *McBath v State*, 108 P3d 241 (Alas, 2005), is particularly informative.

The defendant in *McBath* was the passenger in a truck that was stopped for having an expired license plate. *McBath, supra* at 242. After stopping the truck, the police discovered that the driver was intoxicated and they arrested him. The police told McBath that he was free to go. *Id.* However, McBath then called out to the driver and asked him if there was anything that McBath should remove from the truck before it was towed. The driver asked McBath to remove a toolbox and an unopened 12-pack of beer. *Id.* The police were willing to permit McBath to remove the items, but insisted that he give his name first. When McBath first refused and later provided an unlikely name, the police

846; 103 P3d 454 (2004); *Hardy v Commonwealth*, 149 SW3d 433, 436 (Ky App, 2004); *Quinn v State*, 792 NE2d 597 (Ind App, 2003); *Fletcher v State*, 90 SW3d 419 (Tex App, 2002); *State v Jones*, 270 Kan 526, 529; 17 P3d 359 (2001) (relying on *Green* and concluding that, because there was no evidence of bad faith on the part of the officer, once he discovered the outstanding warrant, the officer had the right and duty to arrest the defendant and effect a subsequent search); *People v Murray*, 312 Ill App 3d 685, 691-692; 728 NE2d 512 (2000) (characterizing the notion that the police cannot arrest a person on a valid warrant after an illegal stop as "illogical and nonsensical"); *State v Hill*, 725 So 2d 1282, 1287 (La, 1998); *Ruffin v State*, 201 Ga App 792; 412 SE2d 850 (1991); *State v Thompson*, 231 Neb 771; 438 NW2d 131 (1989); *State v Lamaster*, 652 SW2d 885 (Mo App, 1983); *People v Hillyard*, 197 Colo 83; 589 P2d 939 (1979); *State v Rothenberger*, 73 Wash 2d 596, 598; 440 P2d 184 (1968) (stating that the suggestion that officers may not make an arrest on a valid warrant after an illegal stop as "indescribably silly"); see also *United States v Hudson*, 405 F3d 425, 438 (CA 6, 2005) (approvingly citing *Green*, but concluding that a stop to see if the person stopped is the person named in a warrant is illegal and that the evidence discovered incident to a subsequent arrest must be suppressed); *State v Soto*, 143 NM 631; 179 P3d 1239 (2008) (concluding that a search subsequent to discovery of a preexisting search warrant was tainted where the purpose of the stop was to run a warrant check). But see *Sanchez v State*, 803 NE2d 215, 222 (Ind App, 2004) (declining to follow *Quinn*).

decided to detain him. *Id.* at 242-243. McBath then revealed his real name and, after a computer search, the officers discovered that McBath had an outstanding warrant. The officers then arrested McBath on the warrant and searched his person only to discover methamphetamine. *Id.* at 243.

On appeal, McBath argued that the methamphetamine should have been suppressed as the fruit of the illegal stop. *Id.* The court in *McBath* examined *Green*, as well as several foreign authorities, and concluded that the proper test for determining whether the methamphetamine should be suppressed must be determined by examining the *Brown* factors. *Id.* at 248, citing *Brown, supra* at 603. However, the court noted that the first *Brown* factor will invariably favor suppression because, in cases involving the discovery of a preexisting warrant, there will almost always be very little time between the illegal stop and the discovery of the warrant. Yet the court stated that "the courts that have considered this question have all but unanimously concluded that, in this kind of situation, the first *Brown* factor is outweighed by the others." *McBath, supra* at 248.

> The following rule emerges from these cases: If, during a non-flagrant but illegal stop, the police learn the defendant's name, and the disclosure of that name leads to the discovery of an outstanding warrant for the defendant's arrest, and the execution of that warrant leads to the discovery of evidence, the existence of the arrest warrant will be deemed an independent intervening circumstance that dissipates the taint of the initial illegal stop vis-à-vis the evidence discovered as a consequence of a search incident to the execution of the arrest warrant. [*Id.*]

Because it was persuaded that this rule was consistent with the policy behind the exclusionary rule, that is, to deter police misconduct, the court in *McBath* adopted the rule that "a pre-existing arrest warrant can (de-

pending on the circumstances) dissipate or attenuate the taint of a prior illegal stop." *Id.* at 249. Because the police conduct was not flagrant or egregious under the circumstances and the search occurred only after the discovery of the arrest warrant, the court concluded that any taint from the illegal stop was too attenuated to affect the admissibility of the methamphetamine. *Id.* at 249-250.

We agree with the reasoning in *McBath* and *Green* and join those jurisdictions that hold that discovery of an outstanding arrest warrant can dissipate or attenuate the taint of an initial illegal stop or arrest. As the court in *Jacobs v State*, 128 P3d 1085, 1089 (Okla Crim App, 2006), aptly noted:

> Our decision balances a defendant's right against illegal search and seizure with the community's expectation that a valid arrest warrant may be served upon a subject, even if police learned about the arrest warrant after an illegal stop. This rule discourages police from flagrantly illegal, investigatory seizures. At the same time, it does not attempt to punish police for mistakes or errors made in good faith. Such punishment would be unlikely to deter police misconduct.[3]

### D. APPLICATION OF THE LAW TO THE FACTS

Although courts confronted with this issue should examine each of the factors from *Brown,* whether the discovery of a preexisting warrant dissipates or attenu-

---

[3] We are also mindful of the serious implications that would follow from a contrary holding: "For example, if the police illegally detain a suspect and discover arrest warrants, may they release the suspect and re-arrest him and then conduct a legal search? If not, is he forever immune from the consequences of a search incident to a subsequent arrest under those same warrants? If so, when can they re-arrest him? After he steps outside the door of the police station? A block away? The same day?" *Fletcher, supra* at 421.

ates the illegality of the initial stop or arrest will usually depend on two main points: "(1) what evidence did the police obtain from the initial illegal stop *before* they discovered the outstanding arrest warrant, and (2) whether that initial illegal stop was a manifestation of flagrant police misconduct—i.e., conduct that was obviously illegal, or that was particularly egregious, or that was done for the purpose of abridging the defendant's rights." *McBath, supra* at 248 (emphasis in original). Purposeful and flagrant misconduct exists where "(1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional" but engaged in it anyway, or where "(2) the misconduct was investigatory in design and purpose and executed 'in the hope that something might turn up.' " *United States v Simpson,* 439 F3d 490, 496 (CA 8, 2006), quoting *Brown, supra* at 605. But where the police only discover the defendant's identity as a result of the initial illegal stop or arrest, and the police misconduct was not particularly egregious or the result of bad faith, the discovery of a preexisting arrest warrant will constitute an intervening circumstance that dissipates the taint of the initial illegal stop or arrest. As such, evidence that is discovered in a subsequent search incident to the lawful arrest need not be suppressed.

In the present case, there is no evidence that the officers' decision to initially speak to Reese was motivated by an improper purpose or that they improperly detained him. Indeed, the officers not only made it clear to Reese that he was free to go, they actually asked him to leave at least twice. There is also no evidence that the officers' ultimate decision to arrest Reese for loitering was motivated by an investigatory purpose—a desire to discover Reese's identity for a LEIN check or as a pretext to search his car. And, although the decision to arrest Reese for loitering may have been influenced by

Reese's belligerent refusal to move along, there is also evidence that the officers genuinely believed that Reese committed the offense of loitering. See *Simpson, supra* at 496. Hence, the misconduct at issue was not flagrant or particularly egregious and may have been the result of a mistaken belief about the nature of the loitering offense. Furthermore, even though the officers placed Reese under arrest for loitering, they did not immediately search his car.[4] Instead, they obtained his name and conducted a LEIN check, which revealed an outstanding misdemeanor warrant. It was only after the officers placed Reese under arrest pursuant to the outstanding warrant that they searched his car and discovered the cocaine.

Because the officers' initial misconduct—the arrest for loitering—was not particularly egregious or motivated by bad faith and only yielded Reese's identity, the subsequent discovery of the preexisting arrest warrant was not tainted by the illegality of that initial arrest. As such, the discovery of the preexisting warrant constituted an intervening circumstance that broke the causal connection between the illegal arrest and the discovery of the cocaine evidence. Because the search was independently justified as a search incident to the lawful arrest on the warrant, Reese was not entitled to have the cocaine evidence suppressed.

### III. CONCLUSION

In the absence of egregious conduct on the part of the arresting officers, the discovery of the preexisting war-

---

[4] Had the officers searched Reese's car under authority of the illegal arrest and only later discovered the preexisting warrant, the discovery of the preexisting arrest warrant could not have served to dissipate or attenuate the illegality of the arrest and, accordingly, the cocaine evidence would clearly have been the "fruit" of the illegal arrest. See *McBath, supra* at 249.

rant dissipated any taint occasioned by Reese's illegal arrest for loitering. Accordingly, the circuit court erred when it concluded that the cocaine was the fruit of Reese's illegal arrest and suppressed the cocaine evidence and dismissed the possession of cocaine with the intent to deliver charge on the basis of that conclusion. Therefore, we reverse the circuit court's decisions to suppress the cocaine evidence and dismiss the charge against Reese, and we remand the case for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.