# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WALTER E. COX,

        Defendant-Appellant.

UNPUBLISHED
May 11, 2017

No. 331151
Wayne Circuit Court
LC No. 00-011035-01-FH

Before: TALBOT, C.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Following a bench trial in 2001, the trial court convicted defendant of possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. Defendant failed to appear for his scheduled sentencing, and he was not sentenced for his convictions until nearly 15 years later in 2015. The trial court imposed a one-year suspended jail sentence for the possession of cocaine conviction, and a prison sentence of one to five years for the felon-in-possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. For the reasons set forth in this opinion, we affirm defendant's convictions and sentences, but remand for the ministerial task of correcting the presentence investigation report.

## I. BACKGROUND

At a hearing on January 22, 2001, defendant waived his right to a jury trial, and trial was scheduled for March 12, 2001. Defense counsel advised that a motion to suppress had been filed with the trial court, but a hearing date was necessary. The basis for the motion was that the police illegally searched the trunk of defendant's vehicle. Specifically, defendant argued that police did not have reasonable suspicion to warrant an investigatory stop and that the stop did not lead to probable cause to justify arresting defendant. The parties agreed with the trial court's suggestion to use the testimony at trial to decide the motion.

At trial the following events were revealed: On September 13, 2000, at approximately 6:00 p.m., Detroit Police Officer David Salazar drove to a residence on Appoline to execute a search warrant; his role was to provide outside security at the location. He was in uniform and driving a marked scout car. Salazar observed a Jaguar parked in the street "just off the driveway" north of the home to be searched. Defendant stood at the rear of the vehicle with the

-1-

trunk open, but reached into his waistband with his right hand and quickly threw a small black object into the trunk. He was approximately four to five feet away from the police car and looked at the officer when he tossed the object. Because it happened so quickly, the officer was unable to get a good look at the object. Salazar advised his partner, Officer Bryan Gilbert, of his observation, and exited the vehicle to investigate the object thrown into the trunk. As he investigated, Gilbert detained defendant. A gun was found lying on top of clothes in the trunk, and it was the only black object. The gun was a .38 caliber handgun, and the serial number was defaced. Defendant was placed under arrest.

Salazar testified that he never saw defendant come from the home that was the subject of the search warrant. He further admitted that he was unable to determine what the black object was at the time it was removed from defendant's waistband. Upon observing the Jaguar, Salazar was more concerned with defendant than the raid because of officer safety issues.

On the day of the raid, Gilbert was working for the narcotics division and was partnered with Salazar to provide outside security. Gilbert saw a Jaguar parked on the street with the trunk open, and he observed defendant at the vehicle when they pulled up alongside it. Gilbert received information from his partner that caused him to detain defendant by holding his jacket for a second and then standing next to him. Defendant was approximately 10 feet from the Jaguar when Gilbert made contact, and defendant did not try to flee. He justified the detention by citing officer safety and defendant's location in front of the home to be raided. Salazar went to the trunk and removed a dark color revolver. Gilbert asked defendant if he had a permit for the weapon, and he said no. At that time, defendant was taken into custody, and a search incident to his arrest was conducted. From defendant's right pants pocket, the officers discovered a plastic bag that contained a substance that tested positive for cocaine. On cross-examination, Gilbert acknowledged that he did not see defendant toss any object or look in the trunk.

The trial court summarized the testimony and then held as follows:

The first issue is the defendant's motion to suppress the gun and his arrest on the basis that the police had no reason to stop and investigate him. Officers Salazar and Gilbert were assigned the duty of perimeter security. It was their job to maintain the safety of the officers as they approached the house, that is, that they had the responsibility of covering the officers' backs. Part of this responsibility is to investigate any suspicious behavior of people in the area of the target house. To stop and investigate someone, they only need to have reasonable suspicion.

Under these circumstances, a man standing in front of an open trunk about 25 feet from a house about to be raided would mandate that the police at least speak to him. The fact that he was seen to toss something into the trunk only enhances the reasonableness of the suspicion. Had Mr. Cox closed the trunk and started walking towards another house that suspicion would have been significantly reduced but that did not happen.

Officer Salazar seeing the gun was not a search. The gun was in plain view. Once the officers saw the gun, they had probable cause to arrest and search Mr. Cox. The motion to suppress the evidence is denied.

The trial court found defendant guilty as set forth above. Although sentencing was scheduled for April 4, 2001, defendant did not appear and a capias issued. Defendant was sentenced nearly 15 years later on December 3, 2015. This appeal ensued.

## II. FOURTH AMENDMENT

Defendant argues that the trial court erred in denying his motion to suppress the contraband that police seized on his person following his arrest in violation of his Fourth Amendment rights.

### i. STANDARD OF REVIEW

The court's ultimate ruling on the motion to suppress is reviewed de novo. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). Questions of law, including constitutional issues, pertaining to a motion to suppress are reviewed de novo. *People v Keller*, 479 Mich 467, 473; 739 NW2d 505 (2007). To the extent that the trial court made findings of fact, those findings are reviewed for clear error. *People v Elliott*, 494 Mich 292, 300; 833 NW2d 284 (2013).

### ii. GOVERNING LAW

The Fourth Amendment of the United States Constitution, US Const, Am IV, and the Michigan Constitution, Const 1963, art 1, section 11, guarantee the right to be free from unreasonable searches and seizures. *People v Slaughter*, 489 Mich 302, 310-311; 803 NW2d 171 (2011). Absent a compelling reason to impose a different interpretation, Michigan's constitutional prohibition against unreasonable searches and seizures must be construed as providing the same protection as that guaranteed by the Fourth Amendment. *People v Green*, 260 Mich App 392, 396; 677 NW2d 363 (2004). The Fourth Amendment search and seizure restrictions protect citizens against unlawful brief investigative detentions. See *id.* However, in *Terry v Ohio*, 392 US 1, 21, 30-31; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the United States Supreme Court held that the Fourth Amendment permits police to make a brief investigative stop and detention of a person if the officer has a reasonable, articulable suspicion that criminal activity is afoot. The police may also make a *Terry* investigatory stop and brief detention of a person who is in a motor vehicle if the officer has a reasonable, articulable suspicion that the person is engaged in criminal activity. *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001); *People v Whalen*, 390 Mich 672, 682-683; 213 NW2d 116 (1973).

When determining reasonableness, the court must consider whether the facts known to the officer at the time of the stop would warrant an officer of reasonable caution to suspect criminal activity. *Terry*, 392 US at 21-22. Good faith on the part of the officer is not enough to justify an investigatory stop. *Id.* at 22. Similarly, an "inchoate and unparticularized suspicion or 'hunch'" is not sufficient. *People v LoCicero (After Remand)*, 453 Mich 496, 502; 556 NW2d 498 (1996), quoting *Terry*, 392 US at 27. Instead, "[t]he reasonableness of an officer's suspicion

is determined case by case on the basis of the totality of all the facts and circumstances." *LoCicero*, 453 Mich at 501-502. "[I]n determining whether the totality of the circumstances provide reasonable suspicion to support an investigatory stop, those circumstances must be viewed as understood and interpreted by law enforcement officers, not legal scholars . . . ." *Oliver*, 464 Mich at 192 (quotation marks omitted). An officer's conclusion must be drawn from reasonable inferences based on the facts in light of his training and experience. Terry, 392 US at 27. Fewer foundational facts are necessary to support a finding of reasonableness when moving vehicles are involved, than if a house or a home were involved. *Whalen*, 390 Mich at 682. Furthermore, a stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is conducted by the police. Id.

### iii. APPLICATION

In this case, Officers Salazar and Gilbert made an investigatory stop when they approached defendant who was standing next to a vehicle, detained defendant, and looked in his trunk. Although defendant was not formally arrested at this point, he was nevertheless detained because a reasonable person in his position would not have felt free to leave. See *People v Vaughn*, 291 Mich App 183, 189; 804 NW2d 764 (2010) (noting that in determining whether a person is detained in police custody, "[a] key question is whether, under the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave—that is, was there a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest.") Thus, in order for the warrantless detention and investigation to have been lawful, the officers needed to have a reasonable, articulated suspicion that defendant was engaged in criminal activity. *Terry*, 392 US at 30-31.

Here, the totality of the circumstances would have allowed an officer of reasonable caution to have a particularized suspicion that defendant was involved in criminal activity. *Id*. The officers were part of a team tasked with executing a search warrant of a suspected drug house. Salazar was responsible for providing exterior security for the officers who were entering the home. Salazar observed a vehicle parked next to the driveway of the home. The trunk to the vehicle was open and defendant was standing next to the trunk. Standing alone, defendant's presence in a high-crime area would not have been enough to create reasonable suspicion that defendant was engaged in unlawful activity. *Illinois v Wardlow*, 528 US 119, 124; 120 S Ct 673; 145 L Ed 2d 570 (2000). However, "officers are not required to ignore relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Id*. Here, considering defendant's location in conjunction with his subsequent actions, Salazar had reasonable suspicion to suspect criminal activity. Specifically, after noticing that defendant was standing next to the vehicle with an open trunk, Salazar then watched as defendant removed a small black object from his waistband—a common area where individuals keep guns—and tossed the object into the trunk of the car.

Importantly, defendant's furtive movements occurred after he noticed that police were in the area as he looked in Salazar's direction while he threw the object into the trunk. The Supreme Court has explained that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Wardlow*, 528 US at 124. While *Wardlow* involved flight at the sight of police officers, "flight is not the only type of 'nervous evasive behavior.'" *United States v*

*Caruthers*, 458 F 3d 459, 466 (CA 6, 2006), quoting *Wardlow*, 528 US at 124. Rather, "[f]urtive movements made in response to a police presence may also properly contribute to an officer's suspicions." *Caruthers*, 458 F 3d at 466. In this case, review of the totality of the circumstances leads us to conclude that defendant's conduct of removing a dark-colored object from his waistband and tossing it into the trunk upon sight of the police, coupled with the fact that defendant was near a suspected drug house, would have allowed a reasonable officer to have a reasonable suspicion that defendant was engaged in criminal activity—i.e. that he unlawfully possessed a firearm—and was attempting to conceal it from police. Thus, under *Terry*, Salazar and Gilbert had reasonable suspicion to conduct an investigatory stop of defendant. *Terry*, 392 US at 27.

The totality of the circumstances further provided reasonable suspicion to justify defendant's brief detention to investigate whether the object tossed into the trunk was evidence of criminal activity or presented a concern for the safety of the officers. According to Salazar, when he approached the car, he looked into the trunk and he saw a black gun "out in the open" lying in the trunk. There were some clothes in the trunk, but no other hard or visible objects. Because the gun was in plain view and its incriminating character apparent, and the car was parked on a public street where Salazar had the legal right to be, Salazar was permitted to seize the gun under the plain view exception to the warrant requirement. *People v Champion*, 452 Mich 92, 101, 549 NW2d 849 (1996) ("The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent.")

Defendant notes that Salazar never indicated whether defendant closed the trunk after tossing the object inside and Salazar did not indicate whether he reopened the trunk. Defendant also notes that co-defendant Swanigan testified the trunk was never open. However, a review of Salazar's testimony supports the trial court's factual finding that the gun was in plain view when Salazar approached and looked into the trunk. Salazar testified as follows:

> *Q*. Did you go over and look in the trunk?
>
> *A*. Yes, I did.
>
> *Q*. What did you see, if anything?
>
> *A*. There was a gun laying in the trunk.
>
> *Q*. Okay. Was it laying out in the open or did you have to search for it?
>
> *A*. Out in the open.

Salazar testified that the gun was in the open, and there was no testimony that defendant closed the trunk after Salazar saw him toss an object inside. Instead, the testimony supported that Salazar and Gilbert approached defendant immediately after he tossed the object in the trunk; Gilbert detained defendant while Salazar approached and looked inside the open trunk. When Salazar saw the gun in plain view, he seized it. The officers' conduct fell within the scope of the *Terry* stop. Moreover, even if defendant had closed the trunk, because Salazar observed defendant toss a small object into the trunk, and given that the police were searching a nearby

-5-

drug house, he had reasonable suspicion that the trunk contained evidence of criminal activity. Thus, the scope of the proper *Terry* stop extended to the contents of the trunk.

In addition, given Salazar's observations that defendant had removed the object from the waistband of his pants, that defendant tossed the object into the trunk, and that the gun was the only object observed in the trunk, Salazar had probable cause to believe that the gun was the object that defendant possessed and threw into the trunk. After defendant denied having a permit for the gun, the police had probable cause to arrest defendant for unlawful possession of a firearm. See *People v Reese*, 281 Mich App 290, 294-295; 761 NW2d 405 (2008) ("[i]n order to lawfully arrest a person without a warrant, a police officer must possess information demonstrating probable cause to believe that an offense has occurred and that the defendant committed it.")

Furthermore, after police arrested defendant, the officers were authorized to conduct a search of defendant's person incident to the lawful arrest. The search of a defendant following his arrest is justified under long-established law. "Among the exceptions to the warrant requirement is a search incident to a lawful arrest," which "exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v Gant*, 556 US 332, 338; 129 S Ct 1710; 173 L Ed 2d 485 (2009). Under this exception, both "the arrestee's person and the area within his immediate control" are subject to a warrantless search at the time of the arrest. *Id*. at 339 (quotation marks and citations omitted).

In this case, as noted above, the police had probable cause to arrest defendant for unlawful possession of a firearm. Given that defendant possessed a handgun, and considering that he was near a suspected drug house, the basis on which a search incident to a lawful arrest were met—the officers had a reasonable belief that a search of defendant's person was necessary for their own safety and for the preservation of potentially incriminating evidence. *Id*. Accordingly, the officers did not violate defendant's Fourth Amendment rights when they searched him following the arrest and discovered cocaine on his person. *Id*.

Defendant cites *People v Shabaz*, 424 Mich 42; 378 NW2d 451 (1985) in support of his argument that evidence of the cocaine should have been suppressed. In *Shabaz*, the defendant was observed by a plain clothes police officer leaving an apartment building carrying a small brown paper bag. The defendant looked in the officer's direction and began to stuff the paper bag under his vest or into his pants. The unmarked vehicle slowed as the defendant passed and nearly came to a complete stop when the defendant began to run. A chase ensued, and the defendant ran into a building. As the chasing officer was about to enter the building, the defendant came out. The officer entered the building's vestibule and retrieved a closed, brown paper bag containing a blue steel revolver. *Id*. at 46-48. However, the officer acknowledged that he was unfamiliar with the defendant, the defendant did not appear to be hiding anything, and other individuals in the neighborhood carried bags similar to those held by the defendant because of a nearby supermarket. *Id*. at 48. Our Supreme Court held that the seizure was unreasonable because the officers were not in the area investigating a crime, a crime was not linked to the defendant, and the officers could only guess at the contents of the paper bag. *Id*. at 64-65.

Defendant's reliance on *Shabaz* is misplaced. In the present case, the police were preparing to execute a search warrant of a suspected drug house when they observed defendant

attempt to conceal a small black object upon him seeing police in the area. When the officers came upon defendant, he looked at the officers and then tossed a dark object from his waistband into the open trunk. Considering that furtive movements may be considered in conjunction with the nature of the area where defendant was present, *Wardlow*, 528 US at 124, here, unlike in *Shabaz*, the totality of the circumstances was sufficient to give rise to a reasonable suspicion that defendant was engaged in criminal activity. *Terry*, 392 US at 27.

In sum, the trial court did not err in denying defendant's motion to suppress the cocaine evidence where the officer's initial detention, investigation, arrest and search of defendant's person fell within exceptions to the Fourth Amendment's warrant requirement.

## II. SENTENCING

Defendant next argues that he is entitled to resentencing because of inaccurate information in the presentence investigation report (PSIR).

"A defendant is entitled to be sentenced on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). Defendant argues, and the state does not dispute, that the PSIR inaccurately stated that defendant was sentenced to a jail term in 2000 for violating his probation for a 1981 conviction of receiving or concealing stolen property. Defendant has submitted court records showing that he was arraigned in 2000 for violating his probation related to the 1981 conviction, but that his probation was terminated. However, this error does not entitle defendant to resentencing because there is no basis to conclude that the trial court relied on the inaccuracy when sentencing defendant. MCL 769.34(10); *People v Jackson*, 487 Mich 783, 792; 790 NW2d 340 (2010).

Specifically, the trial court imposed a one-year jail term for defendant's possession of cocaine conviction, which it then agreed to suspend. The felony-firearm sentence was mandated by statute. MCL 750.227b. The trial court imposed a minimum sentence of one year for defendant's felon-in-possession conviction, which was within the sentencing guidelines range of 5 to 23 months. Defendant does not contend that the inaccuracy regarding the disposition of his probation violation for the 1981 conviction had any effect on the scoring of the guidelines. Moreover, the trial court made no reference to the 1981 conviction or the probation violation for that conviction when imposing the sentence. The discussion at sentencing focused on defendant's failure to appear for his original scheduled sentencing in 2001, and the trial court's rejection of defendant's claim that he was not aware of his obligation to appear for that proceeding. The court acknowledged that defendant was not charged with any new crimes in the last 15 years, but stated that this did not excuse his failure to appear for his original sentencing. Because there is no reasonable basis for concluding that the inaccuracy related to the disposition of the 2000 probation violation arising from the 1981 conviction had any effect on defendant's sentence, defendant is not entitled to resentencing. *Jackson*, 487 Mich at 792. However, remand for the ministerial task of correcting the PSIR to accurately reflect that defendant's 2000 probation violation did not result in a jail term is appropriate. *People v Harmon*, 248 Mich App 522, 533; 640 NW2d 314 (2001).

Affirmed and remanded for correction of the presentence report in accord with this opinion. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello