# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROOSEVELT HARRISON,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2015

No. 324355
Oakland Circuit Court
LC No. 2014-249611-FH

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of carrying a concealed weapon (CCW), MCL 750.227(1), with respect to a knife disguised as a comb and concealed in the pocket of a coat being worn by defendant. He was sentenced to 60 days in jail and one year of probation. We affirm.

Defendant was a passenger in a vehicle that was stopped by the police on February 18, 2014. According to the officer who initiated the traffic stop, he pulled the car over because, although the vehicle was a Chevrolet Malibu, a LEIN check had revealed that the license plate was registered to a Kia. As the officer approached the Malibu and made contact with its driver, he noticed an open can of beer in a paper bag and the smell of marijuana. The driver was able to produce his driver's license, but not proper documents for the vehicle, and he was eventually arrested. Defendant provided the officer with an expired military card and a Michigan identification card. The officer testified that, with defendant's consent, he conducted a pat-down search and discovered a black comb in defendant's left coat pocket, which the officer returned to defendant on the belief that it did not present any threat. A video from a dashboard camera mounted on the officer's police cruiser was played for the jury, showing images from the traffic stop. The officer acknowledged that the incident with the black comb did not come into view of the camera.

Defendant was arrested by the officer after the officer ran a LEIN check on defendant and discovered an outstanding warrant. The arresting officer drove defendant to the police station for booking. The officer testified that during an inventory of defendant's belongings at the station, the black comb fell out of defendant's coat and split into two pieces, revealing a four-inch, double-sided blade. The comb's handle also served as a handle for the blade, which blade slid into a sleeve from which the comb's teeth protruded, effectively disguising the knife and

-1-

explaining why the officer had disregarded it at the time of the traffic stop. The knife was admitted into evidence and displayed to the jury, as well as being identified by the officer in photographs. The jury also heard testimony by a police detective regarding the video recording of bookings at the police station. The detective testified that, after 30 days, all booking videos were automatically taped over, as the video system, which was older, recorded on a 30-day loop, effectively deleting month-old existing footage. The detective confirmed with a records employee that a request for a copy of defendant's booking video had not been received until May 9, 2014, at which time the video of defendant's booking on February 18, 2014, would have been taped over and purged. Further, as asserted by the detective, there was no need for the police to retain the video because it was clear to the arresting officer that the comb/knife had fallen out of defendant's coat during the booking process.

Defendant was charged with CCW pursuant to MCL 750.227(1), which provides, in relevant part, that "[a] person shall not carry a dagger, dirk, stiletto, a double-edged nonfolding stabbing instrument of any length, or any other dangerous weapon . . . concealed on or about his or her person[.]" As explained in more detail below, it is clear from the record that the prosecution's theory at trial was that defendant had concealed a double-edged, nonfolding stabbing instrument of any length. Defendant did not argue in any manner whatsoever that the knife shown to the jury and allegedly discovered by the arresting officer at defendant's booking was not a double-edged, nonfolding stabbing instrument or knife. Rather, defendant argued that the evidence failed to establish that defendant ever possessed or carried the comb-disguised knife, focusing his argument on the lack of video evidence showing that he had possessed or carried the knife and challenging the arresting officer's credibility. The trial court instructed the jury as follows with respect to the offense:

> The defendant in this case is charged with the crime of carrying a concealed weapon. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the defendant knowingly carried a *double-edged knife*. It does not matter why the defendant was carrying the weapon. But to be guilty of this crime the defendant must have known that it was a weapon. Second, that this *double-edged knife* was concealed. Complete invisibility is not required. A weapon is concealed if it cannot easily be seen by those who come into ordinary contact with the defendant. [Emphasis added.]

This instruction is entirely consistent with M Crim JI 11.2, except for the fact that the standard instruction specifically refers to a "double-edged, nonfolding stabbing instrument," which is the language found in MCL 750.227(1), whereas the given instruction simply referred to a "double-edged knife." Defense counsel affirmatively expressed approval of all of the jury instructions. Defendant was convicted by the jury of CCW.

On appeal, defendant first argues that the evidence was factually and legally insufficient to sustain the CCW conviction. In an interrelated argument, defendant contends that the trial court erred by failing to instruct the jury using language consistent with MCL 750.227 and the standard instruction, and that defense counsel was ineffective in approving the faulty CCW instruction that merely referred to a double-edged knife. Before we examine the particulars of defendant's arguments, it is necessary to review the caselaw interpreting MCL 750.227(1) in

-2-

order to provide context to and a better understanding of defendant's claims. In *People v Lynn*, 459 Mich 53, 58-59; 586 NW2d 534 (1998), our Supreme Court construed MCL 750.227(1), observing:

MCL 750.227(1) . . . in effect provides that several categories of knives and stabbing instruments are dangerous weapons per se. If the jury finds that the object is a "dagger," "dirk," "stiletto," or a "double-edged nonfolding stabbing instrument," no further inquiry is required regarding whether the item is within the class of weapons the carrying of which in a vehicle is prohibited. If an item does not fall within one of those categories, the prosecution must proceed on the theory that it falls within the "other dangerous weapon" category. See *People v Brown*, 406 Mich 215, 222-223; 277 NW2d 155 (1979)[, wherein we stated]:

"Accordingly, we . . . hold that where a defendant is charged with carrying a 'dangerous weapon' contrary to MCL 750.227 . . ., the burden is on the prosecution to prove that the instrument carried by the defendant is a dangerous weapon per se or that the instrument was used, or intended for use, as a weapon for bodily assault or defense. The fact that a pointed instrument, such as a machete, has great potential as a dangerous weapon does not render it a dangerous weapon per se. Thus, in the instant case, mere proof that defendant knew that a machete could be used as a dangerous weapon does not support a conviction under MCL 750.227 . . . ."

In this case, the prosecution chose to proceed on the theory that the knives in question were "double-edged nonfolding stabbing instruments." The prosecution could have claimed in the alternative that, even if not dangerous weapons per se, these knives were in fact dangerous weapons. However, it did not do so. [Citations omitted.]

Accordingly, if the instrument at issue is a dagger, dirk, stiletto, or double-edged, nonfolding stabbing instrument, it is a dangerous weapon per se for purposes of MCL 750.227(1). But if the instrument does not fall into any of those categories, the prosecution can only establish the crime by resort to the catchall provision of MCL 750.227(1) ("any other dangerous weapon"), which requires evidence specifically showing that the instrument was used, or intended for use, as a weapon for bodily assault or defense. We note that in *People v Smith*, 393 Mich 432, 436; 225 NW2d 165 (1975), the Michigan Supreme Court ruled that, solely in the context of subsection (1) of MCL 750.227, the reference to "any other dangerous weapon" is "limited to [dangerous] *stabbing* weapons." (Emphasis added.) And M Crim JI 11.4(1) provides that "[a] dangerous stabbing weapon is any object that is carried as a weapon for bodily assault or defense and that is likely to cause serious physical injury or death when used as a stabbing weapon." The jury was not given this instruction, presumably because the prosecution proceeded on the basis that the knife at issue was a dangerous weapon per se, i.e., a double-edged, nonfolding stabbing instrument, and not on the basis that the knife fell within MCL 750.227(1)'s catchall category of "any other dangerous weapon."

Returning to defendant's appellate arguments, he claims that there was no evidence that the instrument or knife was a "stabbing instrument" and thus it was not dangerous per se, nor

was there any evidence that the knife was carried by defendant for assaultive or defensive purposes, assuming application of the catchall provision regarding any other dangerous weapon. This argument dovetails into defendant's next assertion that the trial court erred when it failed to instruct the jury of the prosecution's burden to prove that the instrument constituted a "stabbing instrument" for purposes of the language in MCL 750.227(1) alluding to a "double-edged nonfolding stabbing instrument of any length,"[1] which would make the knife dangerous per se. Defendant also contends that defense counsel was ineffective for essentially waiving the error by approving the CCW instruction that required the prosecutor to merely show concealment of a double-edged knife. Defendant also notes that the trial court did not instruct the jury on the need for the prosecution to show that the knife was used, or intended for use, as a weapon for bodily assault or defense, if indeed the prosecution was attempting to employ the catchall provision of MCL 750.227(1).

As indicated above, the jury was instructed that the prosecution had to prove "that the defendant knowingly carried a double-edged knife." Contrary to the prosecution's alternative argument in support of affirmance of the conviction, we initially accept the proposition that the conviction cannot be upheld under the catchall provision of MCL 750.227(1). We reach this conclusion considering that, as mentioned above, the prosecution clearly did not pursue the charge on that basis and because the jury was not instructed on the definition of a dangerous stabbing weapon, M Crim JI 11.4, which would be implicated when applying the catchall provision and require proof that the knife was carried as a weapon for bodily assault or defense and likely to cause serious physical injury or death when used as a stabbing weapon. See also *Lynn*, 459 Mich at 59. Indeed, M Crim JI 11.2, the applicable CCW instruction in this case, contains an asterisk after the term "weapon" is used, with the asterisk being explained in the Use Note and directing the court to instruct the jury on the definition of the weapon at issue; either a "dangerous stabbing weapon" as defined in M Crim JI 11.4 (catchall), or a dirk, dagger, or stiletto as defined in M Crim JI 11.5. The Use Note further provides that "[i]f the defendant is charged with carrying a double-edged, nonfolding stabbing instrument, no further definition of that term is necessary." Given that neither M Crim JI 11.4 or 11.5, nor their principles, were read to the jury in this case, and considering the trial court's use of the term "double-edged" in the given instruction, we can only conclude that the prosecution did not pursue the charge on the basis that the knife constituted a dirk, dagger, stiletto, or any other dangerous weapon (catchall), leaving only the provision regarding double-edged, nonfolding stabbing instruments as the theory of prosecution.

With respect to the knife being dangerous per se as a double-edged, nonfolding stabbing instrument, the jury was not specifically asked to determine whether the knife constituted a "stabbing instrument." Indeed, it is not entirely clear what the language "stabbing instrument" demands in terms of proof. The prosecution insists that a "knife" is a "stabbing instrument," and therefore, when the jury found that defendant had concealed a double-edged knife, it effectively

---

[1] Defendant focuses on the "stabbing instrument" language of MCL 750.227(1), not the "nonfolding" or "of any length" language. We note that the knife was nonfolding and that the knife's blade was about four inches in length.

found that he had concealed a double-edged stabbing instrument. And thus reversal is entirely unnecessary, despite the trial court not using the precise language found in the statute and standard jury instruction. There can be no reasonable dispute that a double-edged knife, in general, can be utilized as a stabbing instrument in a given situation, as can most knives for that matter.[2] Whether more needs to be established, such as evidence showing actual or envisioned use of a particular knife as a stabbing instrument, showing that it was constructed or designed to be a stabbing instrument, or showing an intent to use the knife as a stabbing instrument, is perhaps debatable. Defendant maintains that it is unclear whether the instrument "was meant to be a stabbing instrument" and that the instrument "does, in fact, look like a letter opener." Defendant notes that at the preliminary examination, as reflected in the transcript, he initially sought to admit testimony that the instrument at issue was a letter opener used by notaries, but then decided against pursuing the issue at the time. The matter was not raised again at the trial. A letter opener can be viewed as being a "knife" of sorts and is clearly not designed to be a stabbing instrument, although it certainly can be used as such. We do note that, as discussed earlier, the Use Note for M Crim JI 11.2 indicates that it is unnecessary to define for the jury the meaning of a double-edged, nonfolding stabbing instrument. One might reasonably dispute this observation.

Ultimately, defendant, through counsel, was agreeable to simply having the jury decide whether the instrument at issue was a double-edged knife, removing from the jury's consideration whether the knife was a "stabbing instrument." We do find, on de novo review, that the direct and circumstantial evidence, when viewed in a light most favorable to the prosecution and resolving all conflicts in the evidence in favor of the prosecution, while deferring to the jury's assessment of witness credibility, was clearly sufficient for the jury to find that defendant carried, in a concealed manner, a *double-edged knife*. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002); *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999); *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992); *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008); *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). The arresting officer's testimony and the admission of the knife and a photograph of the knife sufficed to support the verdict as to a double-edged knife.

Assuming that the trial court erred in not instructing the jury that the prosecution was required to prove that the instrument in dispute was a "stabbing instrument," reversal is nevertheless unwarranted under the particular circumstances of this case. In *People v Kowalski*, 489 Mich 488, 501-502; 803 NW2d 200 (2011), our Supreme Court set forth the following principles regarding claims of instructional error:

> A criminal defendant has a constitutional right to have a jury determine his
> or her guilt from its consideration of every essential element of the charged
> offense. A defendant is thus entitled to have all the elements of the crime

---

[2] We do note that MCL 750.227(1) makes an exception for "a hunting knife adapted and carried as such."

submitted to the jury in a charge which is neither erroneous nor misleading. Instructional errors that omit an element of an offense, or otherwise misinform the jury of an offense's elements, do not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. Accordingly, an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights. [Citations, quotations marks, ellipses, alteration brackets, and emphasis omitted.]

The CCW instruction fairly presented the issues to be tried and adequately protected defendant's rights, considering that the focus of the trial and the substance of the defense pertained to the issue regarding whether defendant carried or possessed the knife, not whether it constituted a stabbing instrument; this is an issue raised for the first time on appeal. The issue of whether defendant possessed or carried the knife was fairly presented to the jury and done so in a manner that adequately protected defendant's rights. We also point out that the jury was instructed that for defendant to be guilty of CCW, "defendant must have known that [the instrument] was a *weapon*." (Emphasis added.) And use of the term "weapon" tends to undermine concerns that the jury may have convicted defendant on the basis of, for example, concealment of a letter opener.

Furthermore, defendant waived any claim that the jury was improperly instructed by agreeing to and approving the CCW instruction. *Lueth*, 253 Mich App at 688 ("By expressly approving the instructions, defendant has waived this issue on appeal."). Moreover, we are not prepared to conclude that defense counsel's performance fell below an objective standard of reasonableness when he approved the CCW instruction, given that it is reasonably arguable that the knife here constituted a stabbing instrument, such that it made sense for counsel to allow an instruction that effectively treated the terms "knife" and "stabbing instrument" interchangeably and instead focus on a defense challenging the "carrying" element of CCW. See *People v Ackley*, 497 Mich 381, 388-389; __ NW2d __ (2015) (reciting the familiar guiding principles concerning claims of ineffective assistance of counsel). This is especially true considering that the knife was disguised as a comb, strongly suggesting a nefarious intent and giving rise to an inference that the knife was intended and designed to be used as a stabbing instrument. Counsel may have thus decided, reasonably so, that a better course of action was to avoid entirely any entanglement in a dispute before the jury over whether the knife was a stabbing instrument, resulting in counsel's approval of the CCW instruction. Defendant has failed to overcome the strong presumption that counsel's performance was born from a sound trial strategy. *Id.* at 388. Reversal is unwarranted.

Defendant next contends that his due process rights were violated when the police failed to preserve the videotape footage of him being booked at the police station. Defendant was booked on February 18, 2014, and the detective's testimony regarding the videotaping of a booking at the police station established that video footage is taped over and effectively deleted after 30 days. If February 18, 2014, is included in the count, the 30th day would have been March 19, 2014, and would have been March 20th if the count is started with February 19th. The preliminary examination was conducted on March 19, 2014, and at the examination, defense counsel, in the context of asking for an adjournment of the examination, mentioned the need to obtain videotapes of the booking process and the traffic stop. At the preliminary examination,

defense counsel did not specifically ask the prosecutor for the videotapes, nor did the district court judge order production. However, in a discovery motion signed by defense counsel on March 19, 2014, a request was made for any videotapes "that may have been made at or near the time of arrest or during the booking process[.]" A proof of service relative to the motion was also dated March 19, 2014. The motion and the proof of service were received by the trial court for filing on March 21, 2014, suggesting that the prosecutor may have also received the motion on March 21, 2014, which was beyond the 30-day preservation period for booking videotapes, even if one started counting the period from February 19, 2014, forward. Even if the prosecution actually received and had a chance to review the discovery motion on March 20, 2014, and assuming that the video of defendant's booking was even still retrievable on that day, there is nothing in the record remotely suggesting that the prosecutor knowingly decided not to make an effort to obtain the footage that very day – March 20th – in order to undermine the defense and preclude retrieval of the videotape.

A defendant's due process right to evidence has been recognized in cases such as *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and *Arizona v Youngblood*, 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988). In *Brady*, 373 US at 87, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, a defendant must prove that: (1) the state possessed evidence of exculpatory or impeachment value to the defendant; (2) the prosecution suppressed the evidence; and (3) the evidence, viewed in its totality, was material, meaning that had the evidence been disclosed to the defense, a reasonable probability exists that the result of the proceedings would have been different. *People v Chenault*, 495 Mich 142, 150-151, 155; 845 NW2d 731 (2014). Here, defendant has failed to establish that the videotape of his booking had exculpatory or impeachment value, that the prosecution actually "suppressed" the video footage, and that the result of the proceedings would have been different had the videotape been obtained.

In *Youngblood*, 488 US at 58, the Court held that the failure to preserve potentially useful evidence does not constitute a denial of due process absent a showing of bad faith by the police. To establish a *Youngblood* violation, "the defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v Jobson*, 102 F3d 214, 218 (CA 6, 1996). Here, under the timeline and circumstances discussed above, defendant has simply not shown any bad faith by the police or the prosecutor in failing to preserve the videotape of defendant's booking.

We also reject defendant's associated argument that defense counsel was ineffective for failing to seek dismissal on the basis of a *Brady* or *Youngblood* violation. In light of our conclusion that there was no constitutional violation, the argument fails, because counsel is not ineffective for failing to make futile or meritless motions. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In his final argument on appeal, defendant claims that defense counsel was ineffective for stipulating to the legality of his arrest and for failing to move to suppress the evidence obtained

in purported violation of his Fourth Amendment rights. The heart of defendant's argument is that the arresting officer had no reasonable suspicion that defendant had committed any crime when he decided to run a LIEN check on him; therefore, "[t]he resulting arrest and subsequent search were . . . unlawful as fruit of the poisonous tree, and the comb/knife should have been suppressed." Defendant does not challenge the constitutional validity of the traffic stop itself.

First, the arresting officer was permitted, consistent with the Fourth Amendment, to detain defendant, within reason, as was done, and have him get out of the car after effectuating the valid traffic stop. *People v Martinez*, 187 Mich App 160, 168; 466 NW2d 380 (1991) ("we hold that a police officer may . . . order a passenger to get out of a motor vehicle stopped during a routine traffic stop under the same circumstances in which the officer may order the driver to get out of the vehicle"); see also *United States v Nunez-Betancourt*, 766 F Supp 2d 651, 657 (ED NC, 2011) (it is well-established that during a routine traffic stop, an officer may briefly detain the driver and passengers in order to perform traditional incidents of such stops). Second, simply running the unobtrusive LEIN check on defendant after the valid traffic stop had been made did not amount to a constitutional violation as reflected in *People v Davis*, 250 Mich App 357, 365-368; 649 NW2d 94 (2002). See also *United States v Foreman*, 369 F3d 776, 781 (CA 4, 2004) (an officer may run computer checks during a routine traffic stop). And once the LEIN check revealed an outstanding warrant for defendant's arrest, there was probable cause to place him under arrest. *Davis*, 250 Mich App at 365. Defendant does not dispute the existence of a valid underlying arrest warrant. Furthermore, in *People v Reese*, 281 Mich App 290, 303; 761 NW2d 405 (2008), this Court stated that it would "join those jurisdictions that hold that discovery of an outstanding arrest warrant can dissipate or attenuate the taint of an initial illegal stop or arrest."

In sum, in light of the caselaw and the facts presented, defense counsel's stipulation that defendant's arrest was valid did not fall below an objective standard of reasonableness, *Ackley*, 497 Mich at 388-389, and counsel's failure to seek suppression of the evidence did not constitute ineffective assistance, because doing so would have been futile, *Ericksen*, 288 Mich App at 192.

Affirmed.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan