# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CLYDE HOUSTON PHILLIP, JR.,

       Defendant-Appellant.

UNPUBLISHED
April 12, 2016

No.  324675
Wayne Circuit Court
LC No.  13-011048-FH

Before:  GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Following a bench trial, the court convicted defendant of first-degree home invasion, MCL 750.110a(2), assault with intent to do great bodily harm less than murder, MCL 750.84, and assault by strangulation, MCL 750.84(1)(b), and acquitted him of a charge of unarmed robbery.  Defendant's convictions stem from his illegal entry into the home of Linda White, after which he attacked and robbed his victim.  Defendant contends that the investigating officers lacked probable cause to arrest him and employed suggestive lineup procedures.  He challenges the sufficiency of the evidence supporting his identity as the perpetrator.  Defendant also accuses his trial counsel of ineffective performance for denying him the chance to take a polygraph examination and pressuring him to waive his right to a jury trial.  These claims are all without merit and we affirm.

## I. BACKGROUND

At approximately 2:00 p.m. on October 14, 2013, White sat in her ground floor unit in an Inkster apartment complex.  She noticed defendant standing near her sliding glass door.  White opened her door slightly to speak to defendant.  Defendant asked to borrow her phone, but White refused.  He then requested a drink of water.  White went to the kitchen and turned her back on the door while she reached for a cup.  Defendant approached White from behind and grabbed her neck to choke her.  White was able to turn around and tried to scream but defendant covered her mouth.  Defendant continued to strangle White until she lost consciousness.

When White awoke, defendant was gone, and so was her jewelry and television.  She contacted the police and described her assailant as a dark-skinned African-American man of "large build," who was approximately 6 feet 4 inches tall and 210 to 220 pounds.  White remembered that he had "a 5 o'clock shadow."  White recognized her assailant as someone she had seen walking through the complex before.

-1-

The following evening, an anonymous caller reported that White's assailant was walking through the apartment complex again. The caller described what the man was wearing at that time. Inkster police officers arrived and found defendant, who was dressed as described by the caller and fit the description provided by White.[1] Defendant told the officers that he was at the complex visiting someone, but did not identify that person. Believing defendant's behavior to be suspicious, the officers took him into custody.

## II. PROBABLE CAUSE

Defendant contends that the evidence against him should have been excluded because the police lacked probable cause to arrest him. Defendant filed a pretrial motion regarding the validity of his arrest, but the trial court rejected his bid to suppress the evidence. "This Court reviews a trial court's factual findings in a suppression hearing for clear error, but reviews de novo the trial court's ultimate ruling on the motion to suppress." *People v Reese*, 281 Mich App 290, 294; 761 NW2d 405 (2008) (citations omitted).

The United States and the Michigan Constitutions prohibit unreasonable searches and seizures by government agents. US Const, Am IV; Const 1963, art 1, § 11. "In order to lawfully arrest a person without a warrant, a police officer must possess information demonstrating probable cause to believe that an offense has occurred and that the defendant committed it." *Reese*, 281 Mich App at 294-295 (quotation marks and citations omitted). In determining whether probable cause exists in the context of anonymous tips, the totality of the circumstances must be considered. *People v Levine*, 461 Mich 172, 179; 600 NW2d 622 (1999), citing *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). When "making a warrantless arrest, an officer 'may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.' " *Gates*, 462 US at 242 (citation omitted). The informant's " 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Id*. at 230.

Here, the trial court focused solely on the officers' reasonableness in acting on the anonymous caller's tip that White's assailant was walking through the apartment complex. The officers did not know the identity of the caller and therefore could not judge his or her veracity, reliability, or knowledge base. The caller did not provide any type of predictive information to test the informant's knowledge or credibility regarding the assertion that defendant was White's assailant. See *Florida v JL*, 529 US 266, 271; 120 S Ct 1375, 1379; 146 L Ed 2d 254 (2000). The only method by which the officers could corroborate the caller's tip was by comparing defendant to the description provided by White. Defendant happened to fit that bill.

Even assuming that the officers lacked probable cause to arrest defendant, this does not automatically require suppression of the evidence:

---

[1] According to the Department of Corrections website, defendant is 6 feet 2 inches tall and on January 2, 2015, weighed 200 pounds. The site includes defendant's photograph, depicting a dark-skinned man with a shadowy beard.

[E]vidence discovered in a search incident to an unlawful arrest may be subject to the exclusionary rule as the "fruit of the poisonous tree." See *Wong Sun v United States*, 371 US 471, 487-488; 83 S Ct 407; 9 L Ed 2d 441 (1963). The exclusionary rule is a "judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." *Arizona v Evans*, 514 US 1, 10; 115 S Ct 1185; 131 L Ed 2d 34 (1995). For that reason, its application has been restricted to "those instances where its remedial objectives are thought most efficaciously served." *Id.* at 11. And whether application of the exclusionary rule is appropriate in a particular context is a separate inquiry from whether the police actually violated the Fourth Amendment rights of the person invoking the rule. *Id.* at 10. Further, not "all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *Wong Sun*, 371 US at 488. Rather, whether the evidence must be suppressed depends on whether the evidence was discovered through " 'exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Id.* (citation omitted); see also *People v Lambert*, 174 Mich App 610, 616-617; 436 NW2d 699 (1989). [*Reese*, 281 Mich App at 295.]

Although the trial court found defendant's arrest illegal based on the absence of probable cause, the court declined to suppress the evidence against defendant. Once the officers transported defendant to the police station, they ran his fingerprints and name through several databases and discovered two outstanding warrants for his arrest. This Court addressed whether the discovery of a preexisting warrant dissipates the illegality of an arrest in *Reese*. This Court held that lower courts must consider:

(1) what evidence did the police obtain from the initial illegal stop *before* they discovered the outstanding arrest warrant, and (2) whether that initial illegal stop was a manifestation of flagrant police misconduct – i.e., conduct that was obviously illegal, or that was particularly egregious, or that was done for the purpose of abridging the defendant's rights. [*Reese*, 281 Mich App at 304 (quotation marks and citation omitted, emphasis in original).]

Misconduct requiring suppression exists when: "(1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it anyway; or where (2) the misconduct was investigatory in design and purpose and executed in the hope that something might turn up." *Id.* (quotation marks and citation omitted).

But where the police only discover the defendant's identity as a result of the initial illegal stop or arrest, and the police misconduct was not particularly egregious or the result of bad faith, the discovery of a preexisting arrest warrant will constitute an intervening circumstance that dissipates the taint of the initial illegal stop or arrest. [*Id.*]

There simply is no evidence that the officers acted in bad faith when arresting defendant. Although the officers responded to an anonymous tip of unknown veracity, defendant actually fit the description provided by White. Defendant behaved in a suspicious manner when approached

and would not identify the individual who he was allegedly visiting. The officers did not attempt to justify their arrest upon bringing defendant to the station. Rather, they collected defendant's fingerprints and ran his identifying information through law enforcement databases as standard procedure in the booking process. The officers' conduct was neither egregious nor based in bad faith. Accordingly, we discern no error in the trial court's denial of defendant's motion to suppress.

### III. LINEUP PROCEDURE

On November 1, 2013, Inkster police conducted a corporeal lineup for White to identify her assailant. Defendant, aged 31, was arranged with five other African-American men. Two were 19 years old and the others were 25, 27, and 50. The men were all between 6 feet and 6 feet 3 inches tall and between 200 and 245 pounds.[2] Defendant contended "that he was the tallest individual [in the] lineup by approximately 4 inches" and therefore stood out, unfairly prompting White to select him. Defendant requested an evidentiary hearing pursuant to *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), to consider whether the lineup was impermissibly suggestive. Based on the testimony of the officers and an attorney present on defendant's behalf, the court found that the individuals bore sufficient similarities to provide a fair identification procedure and denied defendant's motion to suppress the identification evidence.

During the trial, the prosecution presented a document purporting to be a photographic array of the individuals presented for the live lineup. The names associated with the photographs did not match those listed on a handwritten lineup information sheet which was also presented into evidence. When the documents were presented at trial, an Inkster police officer testified that White selected defendant during the corporeal lineup. Defendant was identified as number 3 in that lineup. However, his picture was placed in slot 5 in the accompanying photographic array.

Between the trial and sentencing hearing, defendant filed a motion for a new trial based on this error. The prosecution retorted that a new trial was not required because White never saw the photo array and therefore was unaware of any irregularity, and because an attorney was present at the corporeal lineup and testified at the pretrial hearing that no irregularity occurred. Accordingly, any error was harmless. At the sentencing hearing, the trial court denied defendant's request for a new trial. Even if the photographic array was prepared in error, the court reasoned, White identified defendant during a live lineup after having close contact with her assailant while he choked her.

Defendant now challenges the trial court's pretrial denial of his motion to suppress and later motion for a new trial. In relation to a motion to suppress identification evidence, we review the trial court's legal ruling de novo and any underlying factual findings for clear error. *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013); *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). We review for an abuse of discretion, a trial court's

---

[2] A document prepared contemporaneous to the lineup incorrectly lists defendant's height as 6 feet even and describes that he was 230 pounds at that time.

decision to deny a defendant's motion for a new trial. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

"A lineup can be so suggestive and conducive to irreparable misidentification that it denies a defendant due process of law." *Hornsby*, 251 Mich App at 466. We must consider the totality of the circumstances "to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification." *Id.*

> Physical differences among the lineup participants do not necessarily render the procedure defective and are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from the other lineup participants. Physical differences generally relate only to the weight of an identification and not to its admissibility. [*Id.*]

Other "relevant factors include: the opportunity for the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of a prior description, the witness'[s] level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation." *People v Colon*, 233 Mich App 295, 304-305; 591 NW2d 692 (1998). Even if the court ultimately excludes the witness's pretrial identification of the perpetrator as impermissibly suggestive, the witness can identify the defendant in court "if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993).

The trial court did not err in determining that the pretrial corporeal lineup was not impermissibly suggestive. Defendant was taller than some individuals in the lineup but was apparently the same height as another. His weight was similar to the other men. And his age was similar to two other individuals placed in the lineup. The attorney present during the lineup noted no overly suggestive differences in appearance between defendant and the other men. Moreover, White testified that she had an opportunity to view defendant up close while she spoke to him at her door and while he was choking her. White indicated that she had seen defendant before this encounter, walking through the apartment complex. At the lineup, White identified defendant as her assailant in a matter of seconds. As the individuals bore sufficient physical similarities and White was certain about her identification based on her contact with her assailant, we discern no error in the trial court's denial of defendant's motion to suppress.

We similarly discern no ground warranting a new trial. It appears from the record that the photographic array was prepared in error. However, the trial court did not rely on that document when considering defendant's pretrial motion to suppress. White never saw that document and it never influenced her identification of defendant. At trial, a testifying officer explained that defendant was not placed in the same numerical position in the live lineup as the photographic array, removing any question that White identified someone other than defendant

-5-

when she selected individual 3 at the lineup.[3]  Given this record, the trial court acted within its discretion.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant challenges the sufficiency of the evidence supporting his identity as White's attacker.  We review such challenges de novo, viewing the evidence "in the light most favorable to the prosecution" to determine whether a rational trier of fact "could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007).  "Conflicts in the evidence must be resolved in favor of the prosecution," and "[c]ircumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).  "Special deference is given to a trial court's findings when based on witness credibility." *People v Sherman-Huffman*, 241 Mich App 264, 267; 615 NW2d 776 (2000).

Identity is an element of every criminal offense.  *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).  "[P]ositive identification by witnesses may be sufficient to support a conviction. . . ."  *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).  The credibility of that identification testimony "is a question for the trier of fact that we do not resolve anew." *Id.*

The trial court considered the credibility of White's testimony and her earlier report to the police, including her description of the perpetrator, her identification of defendant, and the similarity between White's description and defendant's physical appearance.  White had ample opportunity to view her attacker, both before and after the assault.  And White recognized defendant before the assault began as someone she had seen walking through the apartment complex before.  Based on this evidence, the court could determine beyond a reasonable doubt that defendant was the person who committed these offenses.

## V. ASSISTANCE OF COUNSEL

Finally, defendant argues that he was denied his right to the effective assistance of counsel when his trial attorney would not allow defendant to take a polygraph examination and when he pressured defendant into waiving his right to a jury trial.  Although  defendant  filed  a motion to remand to the trial court for a hearing pursuant to *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), this Court denied that motion. *People v Phillip*, unpublished order of the Court of Appeals, entered January 15, 2016 (Docket No. 324675).  As such, our review is

---

[3] Defendant contends that his trial counsel was ineffective for failing to challenge the validity of White's identification of defendant based on the numbering used in the photographic array.  As the testifying officer explained the discrepancy, any challenge on this ground would have been without merit and counsel cannot be deemed ineffective for failing to raise it. *People v Snider,* 239 Mich App 393, 425; 608 NW2d 502 (2000).

limited to mistakes apparent on the existing record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

> " '[T]he right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 663-664. The defendant also must overcome the strong presumptions that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, 307 Mich App 151, 157-158; 858 NW2d 520 (2014), rev'd in part on other grounds 498 Mich 902; 870 NW2d 893 (2015).]

In support of his challenge, defendant attached an affidavit asserting that his trial attorney "convinced [him] that it was best to waive [his] jury trial right based on the evidence; however, the case was so early, it was ineffective to waive the jury trial so early in the case." Yet, the record demonstrates that defendant waived his right both knowingly and voluntarily, in accordance with MCR 6.402(B). Prior to his waiver, defendant stated on the record that he was aware that he had a constitutional right to a jury trial, avowed that no one threatened or coerced him into waiving this right, and indicated that he had discussed this matter with his attorney. Based on the existing record, defendant is unable to demonstrate that he was improperly pressured into waiving his jury trial right.

The record is silent regarding defendant's desire to take a polygraph examination or counsel's alleged refusal to permit him to do so. Even if counsel had refused to allow defendant to take a polygraph examination, this decision would not have been outcome determinative. The results of polygraph examinations are not admissible at trial and therefore could not have been used to establish defendant's innocence. *People v Phillips*, 469 Mich 390, 397; 666 NW2d 657 (2003). Accordingly, defendant's challenge warrants no relief.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood